IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANNY E. BEAUCLAIR,

Plaintiff,

v.                                      CASE NO.  14-3041-SAC

RAY ROBERTS, Secretary
of Corrections, et al.,

Defendants.

## MEMORANDUM AND ORDER

This pro se civil rights complaint was filed pursuant to 42 U.S.C. § 1983 by an inmate of the El Dorado Correctional Facility-Oswego (OCF).  Plaintiff claims denial of effective medical treatment for chronic severe pain and related sleep problems by prison officials and medical personnel at the OCF. The court finds that the Amended Complaint[1] fails to state sufficient facts to evince a federal constitutional violation and dismisses this action for failure to state a claim and as frivolous pursuant to 28 U.S.C. § 1915A(a),(b) and 28 U.S.C. § 1915(e)(2)(B)(i),(ii) because it is repetitive of prior complaints filed by Mr. Beauclair dismissed on the same grounds.

## BEAUCLAIR'S RELEVANT FEDERAL COURT LITIGATION HISTORY

---

[1]    Plaintiff has filed a First Amended Complaint (Doc. 3), which completely superseded his original complaint (Doc. 1), and the original complaint is not considered further.

The court takes judicial notice of all relevant cases filed by Mr. Beauclair in this court.

**_Beauclair v. Graves et al._, Case No. 03-3237-SAC.**

This prior civil rights action naming 67 defendants was filed by Mr. Beauclair in 2003. He complained of being in constant pain spanning his confinement in a county jail and three correctional facilities and claimed that medical staff and government officials had provided inadequate treatment and refused his requests for alternative treatments. He specifically claimed "inadequate medical care for fibromyalgia." See _Beauclair v. Graves_, 2006 WL 1789139 (D.Kan. June 29, 2006). In addition, he complained of "not getting an additional mattress he believes would relieve pain," sleep problems, pain and sensory problems related to fibromyalgia, and ineffective pain medications.[2] _Id.,_ n.3. Plaintiff was initially ordered to file an Amended Complaint and instead filed five "amendments or supplements." The court screened the "voluminous" materials and found that the "record fully document(ed) continuing care and attention to plaintiff's numerous medical needs." _Id._ at *2. The standards for an Eighth Amendment denial of medical care claim were set forth. The court further found "plaintiff's

---

[2]     In this case, plaintiff documented that he had submitted 23 grievances to staff at Lansing Correctional Facility (LCF) each "itemizing" a specific medical complaint and was evaluated by a rheumatologist. Thereafter, he complained that the rheumatologist's overall assessment of his condition failed to address the treatment needed to alleviate each of his specific symptoms.

allegations fail to suggest that any defendant disregarded an obvious medical concern or failed to take reasonable steps to address any medical need that presented a substantial risk of harm." *Id.* The court held that "even if plaintiff's constant pain and array of specific medical problems" amounted to a serious medical need, "no cognizable Eighth Amendment claim" was stated because plaintiff failed to satisfy the subjective element of deliberate indifference. *Id.* The court specifically held that:

> [a]lthough plaintiff alleges additional and different treatment is necessary to alleviate his pain and suffering, no deliberate indifference is established by this difference of opinion regarding appropriate medical care.

*Id.* The court also specifically held that "[t]o the extent plaintiff alleges no cure" has been provided "for his continuing pain and specific medical problems," no deliberate indifference is established because constitutionally acceptable care was provided. See *id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)(physician inability to effect final cure is not proof of deliberate indifference), *cert. denied*, 519 U.S. 1126 (1997)). The action was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c)(2), and counted as a strike against Mr. Beauclair.

Beauclair appealed this decision to the Tenth Circuit Court of Appeals, which affirmed. See *Beauclair v. Graves*, 227

Fed.Appx. 773, 778 (10th Cir. 2007).   The Tenth Circuit noted that Beauclair had been diagnosed with numerous ailments including fibromyalgia, chronic fatigue, chronic pain syndrome, sleep disorder, osteoarthritis, and degenerative disc disease. *Id.* at 775.   Beauclair alleged on appeal that he was in "constant pain" and that "prison officials and medical staff provided inadequate treatment and ignored his requests for alternative measures." *Id.*   However, the Circuit found that Beauclair had "conceded in his opening brief" on appeal that "he received the treatment deemed appropriate by the medical staff of each of the facilities" and "was given pain medication and a treatment regimen." *Id.* at 777-78.   The Circuit agreed that "[t]he record fully documents continuing care and attention to plaintiff's numerous medical needs" and that plaintiff's allegations merely showed a difference of opinion regarding appropriate medical care or, at worst, negligence. *Id.* at 773.

### *Beauclair v. Werholtz*, **Case No. 07-3022-SAC.**

This prior civil rights action was filed by Mr. Beauclair in 2007 against prison officials and medical staff at two KDOC institutions.   He complained that defendants were "deliberately indifferent to his obvious medical needs by not providing effective treatment for his chronic fatigue and fibromyalgia." *Beauclair v. Werholtz*, 2007 WL 2490910 (D.Kan. Aug. 30, 2007). Upon screening the complaint, this court found that plaintiff

failed to meet pleading requirements and appeared to be "seeking relief on claims previously decided" in *Beauclair v. Graves*, Case No. 03-3237. *Id.* at *1. The court cited *Allen v. McCurry*, 449 U.S. 90, 94 (1980), which held that the doctrines "of res judicata and collateral estoppel preclude[] relitigation of claims that were, or could have been, litigated in a prior action." *Id.* at *2. Plaintiff was directed to amend his complaint and complied, adding 13 defendants and 19 claims. Plaintiff claimed that "he suffered from a myriad of medical problems for which the treatment provided offers no relief" and asserted that "medical and correctional staff" were denying him "appropriate medical care" and "subjecting him to needless pain and suffering." *Id.* This court reviewed the amended complaint and required plaintiff to show cause why the action should not be dismissed. *Beauclair v. Werholtz*, 2010 WL 1285449 (D.Kan. Mar. 31, 2010). The court recalled the Tenth Circuit's finding in Beauclair's prior case that his allegations "merely showed a difference of opinion regarding appropriate medical care, or at most negligence." *Id.* (citing 227 Fed.Appx. 773 (10th Cir. 2007). Plaintiff's allegations in this 2007 and his 2003 action were discussed including those about fibromyalgia. Also discussed were his "numerous" repetitive administrative grievances, his having misconstrued a nurse's remark as supporting his contention that all medical directives to

exercise violated her prior medical order, and his having misconstrued as a denial of medical care a doctor's remark "that it would be a 'waste of time' for plaintiff to repeatedly seek medical attention contrary to recommended treatment." *Id.* at *2. The court found from the record that plaintiff's allegations of previously "prescribed care" were often selective or unfounded and in any event did not "control plaintiff's subsequent medical care and treatment as explained to plaintiff in later medical assessments and administrative responses." *Id.* at *3. This court further found that plaintiff was "receiving continuing care for a chronic condition that involves persistent pain" and had "no right to the specific medical treatment" or accommodations "that he demands."[3] *Id.* at *3.[4] The court noted

---

[3] The court recalled Mr. Beauclair's complaint that medical staff encouraging him to ambulate and exercise more was detrimental to his well-being. After his transfer to EDCF, he complained of missing many meals because he would not walk to chow, claiming it would be painful and might cause his fibromyalgia to flare up. At the same time he acknowledged that he walked to visitation, the library, and the commissary. *Beauclair*, 2010 WL 1285449 (D. Kan. 2010)(subsequent determination). His administrative grievances included claims that walking to chow would cause a flare-up and that defendants' refusal to deliver meals to his cell or provide an aide "to assist plaintiff as needed" and a wheelchair, or a one-man cell in the clinic where he could get regular meals, assistance, and a better bed resulted in him missing numerous regular meals. Plaintiff cited published articles about fibromyalgia and maintained that his confinement should be restricted and accommodated so as not to push him beyond his personal limits. He contended that the denial of these requests, as well as the denial of his requests for tests, accommodations, and medication, subjected him to needless pain and suffering.

[4] Plaintiff was reminded that he may not rely on the doctrine of respondeat superior. He was also informed that denial of relief on administrative appeal is insufficient to state a claim against the reviewing officials and fails to establish their personal participation, so that his claims against the Warden and Secretary of Corrections based on their alleged failure to investigate and take corrective action failed.

that Mr. Beauclair had simply

> reiterate(d) his arguments that persistent ineffective
> treatment for his chronic pain by defendants at LCF
> and EDCF subjected him to needless pain and suffering
> by denying him relief and exacerbating his condition.

*Beauclair v. Werholtz*, 2010 WL 3842560, *1 (D.Kan. Sept. 28, 2010). The court remained "convinced that plaintiff's facts would not allow one to reasonably infer that any defendant was deliberately indifferent to plaintiff's medical needs." *Id.* This action was dismissed for failure to state a claim and counted as another strike. This decision was not appealed.[5]

**Beauclair v. Norris, Case No. 12-3189-SAC.**

This prior civil rights action was filed by Mr. Beauclair in 2012 against Dr. Norris and KDOC officials included as defendants based upon their "supervisory liability." In 2011 at the LCF plaintiff told optometrist Dr. Norris that he needed tinted lenses and that in 2007 at the EDCF Dr. Joyce had provided him with tinted lenses. Dr. Norris prescribed new

---

[5]     *Beauclair v. Cochran, et al*, Case No. 12-3216 (D.Kan.) is another action filed by plaintiff. In this pending action, plaintiff asserts that being forced to participate in the SOTP would result in "acute relapse of his medical problems." *Id.* (Doc. 8) at 16. He also claims that he repeatedly informed defendant Cochran of pains from his hard mattress, but Cochran would "either provide known ineffective pain medication" or claim the medical department could not order a thicker mattress. *Id.* at 17-19. He alleges that the "National CFIDS Foundation" has stated that the most helpful treatment for Chronic Fatigue Syndrome is rest, another treatment may be reduced stress, and that he provided this information to Cochran. *Id.* at 19. He indicates that he filed grievances about his mattress on March 22 and 26 and September 15, 2013, and a grievance against Nurse Medcalf in July 2013 because she told him there was nothing they could do about pains from his mattress. All were returned. He also wrote Roberts and Heimgartner, defendants in this case as well, in August and November 2013, about pain from his hard, broken-down mattress. *Id.* at 22-23.

eyeglasses but denied plaintiff's request for tinted lenses. The court ordered a Martinez Report on plaintiff's claim that he was denied necessary medical care in the form of tinted eyeglasses. Medical records provided with the Report revealed that when plaintiff's new un-tinted glasses arrived at the LCF, he left them at the clinic.[6] The court held that plaintiff's reliance on the involvement of defendants McKune and Roberts in the processing of his grievances regarding eyeglasses with tinted lenses failed to show their personal participation and establish their liability.[7] On September 4, 2014, the court dismissed this action for failure to state a claim.

**Beauclair v. Dowd**, Case No. 13-3169-RDR.

This prior civil action was filed by Mr. Beauclair in 2013 "against nine state and federal judges and five private defense

---

[6]   They also showed that he went to sick call in 2012 wearing his old glasses, complained they had lost their tint, sought help for headaches and eye pain but declined a prescription for ibuprofen, and that in September 2013 he declined an outside appointment for a "fundoscopic photo exam." Then in June 2014 at the OCF, he complained of headaches, blurred vision, and eyestrain from an eye injury during welding; his eyes were examined; and he was prescribed eyeglasses with a medium tint to address the photophobia from the reported injury. He received new glasses in July 2014.

[7]   As to defendant Norris, the court found:

[T]he record includes an affidavit from defendant Norris, the optometrist who examined plaintiff in 2011 . . . that explains his conclusion that the tinted lenses sought by plaintiff were not medically indicated . . . . This decision is plainly one of medical judgment, and the court, having carefully considered the Martinez report and the response of the plaintiff, concludes that the plaintiff cannot make out a claim of an Eighth Amendment violation on the facts alleged. Plaintiff's dissatisfaction with the medical assessment of defendant Norris is not sufficient to state a claim for relief.

*Id.* (Doc. 38) at 7-8.

attorneys" and alleged that plaintiff's "due process rights were violated in various criminal and postconviction proceedings in state and federal court."  See *Beauclair v. Dowd*, 582 Fed.Appx. 783 (Oct. 23, 2014).  The action was dismissed after plaintiff was notified that it would count as a strike against him. Nevertheless, Mr. Beauclair appealed the dismissal as against Judge Dowd.  The Tenth Circuit affirmed based on absolute judicial immunity and found that plaintiff's request for prospective relief amounted to an improper attack upon his conviction.  The Tenth Circuit assessed two strikes against Mr. Beauclair "for his wholly meritless claim in district court and his frivolous appeal."  *Id.* at 784.

The foregoing review of Mr. Beauclair's litigation history reveals that before he filed the instant complaint, at least two substantially-similar civil rights complaints were filed by him that were dismissed for failure to state a claim.  In addition, he had been assessed three strikes by this court.  Despite these rulings, in 2014 Mr. Beauclair filed six new civil complaints: *Beauclair v. High*, Case No. 14-3020-SAC; *Beauclair v. Roberts*, Case No. 14-3022-SAC; *Beauclair v. Green*, Case No. 14-3023-SAC; the instant case; *Beauclair v. Cochran*, Case No. 14-3128-SAC; and *Beauclair v. Harrod*, Case No. 14-3146-SAC.  The new complaints filed by Mr. Beauclair clearly include claims that are substantially similar to those dismissed in his prior cases

for which he was assessed strikes.[8]

## ALLEGATIONS AND BACKGROUND

Mr. Beauclair was sentenced in 2002 for rape and aggravated criminal sodomy of a child less than 14.  He has since been confined within the Kansas Department of Corrections (KDOC) and housed at the OCF since January 14, 2013.  Mr. Beauclair has been diagnosed with several serious medical conditions, which he describes in the instant complaint as follows.  Prior to his incarceration, he was diagnosed with a shoulder injury from which he has not recovered; a herniated disc that causes pain when he is lying down, sitting or standing; and fibromyalgia with symptoms including ongoing "widespread pain" and "poor unfreshing sleep every night."  He also suffers from chronic muscle pain diagnosed as Myofacial Pain Syndrome (MPS); joint pain, pain from light and sound sensitivity, weakness, head pain, and exhaustion diagnosed as Chronic Pain Syndrome and "Chronic Fatigue and Immune Dysfunction Syndrome" (CFIDS); osteoarthritis of the neck, shoulders, back and hips; and plantar fasciitis.  In addition, he "has problems" with his immune, digestive, bowel, bladder, and endocrine systems as well as his brain.  Due to his diagnosed conditions, plaintiff has

---

[8]    Beauclair's statements on complaint forms that he has not filed prior cases based on the same facts are disingenuous at best and a likely violation of Rule 11.

trouble breathing, seeing, hearing, speaking, eating, sleeping, caring for himself, performing manual tasks, walking, standing, lifting, bending, concentrating, thinking, communicating, and working.  Pain in plaintiff's right hand is aggravated when he writes.  Plaintiff's pain and poor sleep interfere with his daily activities, and he does not participate in indoor activities, work programs, or outside yard exercise.  He has "medical problems" every time he goes to the chow hall, the bathroom, or anywhere away from his bunk.

In the instant complaint, plaintiff makes the following general allegations regarding the treatment he has received for his medical problems while in prison.  He has "complained many times in the past at OCF about (his) pains and poor sleep."  "At times, I only received known ineffective pain medications, which is like giving me no care as I see it."  He complained in a sick-call slip that "doctors/APRN had done nothing to help him with his pain" and sleep problems "for months" and that his medical records showed "for years" that "mild pain relievers" were ineffective.  "[F]or years" within KDOC and at OCF, he complained of shoulder pains in sick-call slips.  "In the past within KDOC" he has been issued ineffective pain medications, a cane and an egg-crate pad for his bed that were taken away, a knee support that caused pain, a wheelchair to minimize his pain from standing and walking, and sleep medications that he found

to be ineffective.

The additional background facts that follow have been constructed from plaintiff's allegations and exhibits in this and his other relevant civil cases. In March 2011, a grievances response from Deputy Secretary Johnnie Goddard addressed nine of plaintiff's grievances "collectively that largely raised the same issues. Case No. 12-3189 (Complaint) Doc. 1-1 at 1. Plaintiff was informed in this response:

> If CCS determines that you need a restriction one will be written for you. If CCS determines that you require special medical devices such as . . . tinted lenses, a cane, . . wheel chairs, . . or mattresses, a medical order will be written. If CCS determines that you need certain medications, an order will be written. However, you will not be allowed to determine your need for any of these things. It is my suggestion that you work with CCS rather than against CCS as I believe that they provide the care necessary to meet your medical needs.

*Id.* Plaintiff submitted a grievance dated March 27, 2011, in which he sought to avoid the Sex Offender Treatment Program (SOTP) claiming it would aggravate his medical problems. *See* Case No. 12-3216 (Complaint) Doc. 1-1 at 5, 23. Therein, Mr. Beauclair stated:

> I was taken off all work years prior to prison so I could limit my activities, as pain medications were 100% ineffective on me for years.

*Id.* In June 2011, plaintiff received a "Non-Grievance-Response" from Deputy Secretary Johnnie Goddard that listed 40 complaints from all plaintiff's "grievances and correspondence dated

6/21/11 and prior." *See* Case No. 12-3189 (Doc. 1-1) at 2-3. The list included complaints regarding his mattress, tinted glasses, "ineffective pain medication," lack of care for fibromyalgia pain, disallowance of "KOP medications," not receiving proper physical therapy (PT); need for medical limitations on his activities including no walking to chow, need for a helper to perform daily activities, and inability to participate in SOTP until properly treated, medical complaints not responded to, and medical records not kept. *Id.* Goddard's response provided:

> FINDINGS OF FACT:
> This inmate has been evaluated and his care has been reviewed on each one of the complaints listed in this document most of these complaints are unfounded. Those very few that were legitimate have been addressed.
>
> CONCLUSIONS MADE:
> This inmate is clinically stable and further care and/or treatment on these issues is not needed past the care treatment he is currently receiving.   The inmate was transferred due to his intense supervision needs regarding his continuous medical complaints. Care can be provided for inmate Beauclair at any of the KDOC facilities.   However, it is in the State's best interest to place this inmate at ECF at this time due to the ECF's staff familiarity with his concerns and/or complaints.   This will allow KDOC to more effectively answer and/or monitor his concerns until this inmate is willing to cooperate and participate fully in the SOTP program.   At such time as this individual chooses to participate fully in his health care plan and the SOTP program without any conditions being placed on his participation by the inmate, a plan will be developed to allow access to SOTP programing if space/availability allows once the inmate has decided to fully cooperate. . . .

ACTION TAKEN:
. . . We will not respond to any further complaints on
the 40 issues listed in this grievance response unless
there are significant changes to the findings
requiring action to be taken.

*Id.* at 3.

In two memos dated March 7, 2012, Ray Roberts notified
plaintiff that four grievances submitted by him to HCF Warden
Cline in 2011 and 2012 were repetitive and fined him $5.00 each
as authorized by KAR 44-15-102(d).  Case No. 14-3041 (AC) Doc.
3-1 at 21-22.  Plaintiff received a similar notice on February
6, 2013.  *Id.* at 23.

On March 20, 2013, Warden Heimgartner sent a memo to Mr.
Beauclair on "Abuse of the Grievance Process" noting he had
previously been warned about such abuse at the HCF and that
sanctions had been requested "as recently as January 23, 2013"
based on his "repetitive grievances about the health care
treatment you receive."  *Id.* at 18.  Heimgartner further noted
that plaintiff had "already filed a number of grievances" at the
EDCF concerning his "course of treatment" that were
"duplicative."  The dates, locations, and subjects of these
grievances were provided.  Mr. Beauclair was again advised that
he "may not abuse" the right to file grievances by submitting
"repetitive grievances on the same topic," that such grievances
would be returned without substantive comment and the Secretary

would be asked "to impose appropriate sanctions." *Id.* On October 23, 2013, Heimgartner wrote plaintiff another memo on his grievance abuse noting that since the last one, OCF staff reported that Beauclair "continued to file repetitive grievances" and, "[a]ccording to Unit Team Miller's records," had "filed nearly 40 grievances since February 2013." *Id.* at 19. Heimgartner listed 18 grievances that concerned Beauclair's medical care and were "duplicative in their subject matter." Heimgartner stated "[t]his is clearly abuse of the system," staff would continue to monitor his filings, he "may not abuse" the grievance process by filing "repetitive grievances on the same topic," and the Secretary was being asked to impose a $5.00 sanction. *Id.*

In plaintiff's supporting facts in his Amended Complaint in this case, his initial allegations are that "prior to November 1, 2013," APRN Cochran advised him that there were other forms of "treatment for his medical problems" but they were "not allowed within a prison setting,"[9] and on or about November 1, 2013, he was prescribed a medication called "amitripileen"[10] for his pain and sleep problems. On November 18, 2013, plaintiff sent a "Notice" letter to defendants Roberts, Heimgartner, the

---

[9]    This vague hearsay statement by plaintiff with no clear date is not entitled to a presumption of truth.

[10]    Plaintiff appears to misspell the name of this medication. It is assumed to be the same as medication referred to herein as "Amitriptyline."

Governor, and Correct Care Solutions (CCS).  *Id.* at 13.
Therein, he stated that he had submitted sick-call slips
"dealing with different pains and poor unrefreshing sleep" since
his assignment to OCF, had repeatedly been given "known
ineffective pain medications" or offered no pain medication, and
was "currently being denied pain medications."  *Id.*  He also
stated he was told by the nurses and HCPs that he was "being
denied because (CCS) will not allow (him) to have stronger pain
medications" and by doctors that they must follow rules and can
only prescribe treatments allowed by the CCS and KDOC.  *Id.* at
13-14.  He also complained that he was "not provided" a new
thicker all-foam mattress or an extra mattress.  In addition, he
complained that he was no longer allowed to file medical
grievances, had been fined $5.00 per grievance, and no longer
had effective administrative remedies as a result.  *Id.*  He gave
notice that he would proceed to court if the "violations" were
not stopped.

On November 22, 2013, Beauclair submitted an "Inmate
Request to Staff Member" (IR) asking if Cochran's request for
him to be "allowed to try one of the FDA approved pain
medications"[11] had been approved.  *Id.* at 11.  On December 6, RN
Kemp responded: "The medication that was ordered for you, you

---

[11]    Plaintiff never describes these medications other than by these
conclusory terms, and does not allege that the medications he was prescribed
were not FDA approved.

signed a refusal." *Id.* On December 23, plaintiff submitted a 5-page grievance against ARNP Cochran, Nurse Kemp, and two others claiming "not receiving competent care by the clinic." *Id.* at 7-10 & (Doc. 5) at 2. He also claimed that Kemp had lied in her prior response:

> The medication she spoke of was "Amitriptileen" I assume because that was the last medication I signed refusals on at OCF. Kemp knew, or should have known as a RN, that "Amitriptileen" was not one of the few pain medications that is FDA approved for my fibromyalgia (FMS). Amitriptileen is an off lable (sic) usage for FMS.
> I had seen ARNP Mr. Cochran days after signing refusals for the Amitriptilean. He stoped (sic) that order for me because it was known to be Ineffective on me for many years. At that visit with the ARNP he stated to me he would request one of the FDA approved pain medications for FMS. That occurred the first part of Nov 2013. I have been suffering needlessly since that time with NO medical care and treatment for my FMS pain. Kemp knew this and did nothing but try and cover-it up by her untrue statement dated 12/6/13.

*Id.* (Doc. 3-1) at 8. Plaintiff assumed Cochran's request was denied and claimed Cochran should have "done something further" to provide treatment for plaintiff's "known FMS" pain every day. *Id.* He requested adequate treatment for his FMS pains and "not continue to order known ineffective treatments." The response written upon this IR was: "This appears to be a duplicate complaint." *Id.* at 7. Plaintiff appealed U.T. Miller's denial of his grievance, claiming that the person who "lied" that the issue was a duplicate and Miller acted with deliberate indifference. He requested that they both be punished. *Id.*

Warden Heimgartner responded on January 16, 2014, that the grievance "is a duplicate issue which has previously been responded to." *Id.* at 3.

On January 10, 2014, plaintiff received a "Non-Grievance-Response" from Deputy Goddard referencing plaintiff's "grievance letters." *Id.* at 12.   Goddard set forth "Findings of Fact" including that "in the month of September 2013 alone there were 24 encounters in the EHR (Electronic Health Records) documenting visits with either the HCP or Nursing."   Goddard also found that Beauclair

> was started on Amitriptyline to assist with his pain and sleep on 11/2/13 and the medication was discontinued on 11/4/13.  He was not on the medication long enough to give it a fair trial.

*Id.*

On January 22, 2014, plaintiff wrote a letter to Roberts and Heimgartner stating he was proceeding with a civil action against them.  He generally claimed that he had "submitted sick-call slips repeatedly at OCF" and had "not received any care at all" for his pains and hard painful mattress "since November 2013."   He also claimed that Roberts and Heimgartner had violated numerous regulations, state statutes, and duties to him, and had ignored "the deliberate indifference going on against (him) by nurses and HCPS at OCF." *Id.* at 16.

In a memo dated March 14, 2014, Roberts notified Beauclair

of 15 grievances submitted by him that had been "identified as repetitive" and imposed $5.00 fines for each. *Id.* at 24.

In his newer pending Case No. 14-3146, plaintiff submitted 53 attachments with his complaint. In an IR dated March 20, 2014, he asked, "why am I denied a new replacement mattress when mine has been broken down for many months cause (sic) me severe pains at night." *Id.* Complaint (Doc. 1-2) at 45, 49. U.T. Philbrick responded that the request was received, reviewed, returned. Plaintiff filed a grievance stating he was dissatisfied with Philbook's response. On April 7, Deputy Warden Snyder responded:

> CS III checked your mattress 4/2/14 1340. He advised "I inspected I/M Beauclair's mattress. I was not able to find any folds, creases, cracks, tears or cuts on the exterior of the mattress. All of the seams were still intact. The comfort of the mattress was comparable to two other mattresses." He further advised he could not find anything wrong with the mattress. . . . Based on CSIII Henley's inspection of your mattress, you will not be issued a replacement mattress.

*Id.* at 46. Plaintiff appealed to Warden Heimgartner claiming that Philbrick, Miller, Snyder, and Dr. Harrod acted with deliberate indifference in denying his mattress requests. Hemigartner affirmed on April 18. *Id.* at 42, 50-51. Plaintiff appealed "to KDOC," and Secretary of Corrections designee Douglas Burris affirmed on May 8, 2014. *Id.* at 42, 53. On that day, an MRI was performed on plaintiff's spine at the Parsons

Hospital.  *Id.* at 7.   On May 14, 2014, plaintiff received a "Non-Grievance-Response" from Deputy Goddard noting plaintiff's complaint about his mattress; finding the issue had "already been addressed" in previous responses; and advising Beauclair to "continue his treatment plans" and "access sick call at his facility to resolve further issues."  *Id.* at 40.   On May 21, 2014, Cochran and Dr. Harrod sent plaintiff "to Parsons hospital for a P.T. evaluation" even though he had swelling and pain and had informed them and some nurses at the OCF that PT "considerably exacerbates" his pain.   He left the hospital in severe pain because the person who performed the evaluations moved his leg and foot despite his warning.  *Id.* at 6.   In plaintiff's "Declaration" dated May 27, 2014, he stated the following.  *Id.* at 1.  On this date, he was called to the clinic and Dr. Harrod examined his mouth ulcers.   He complained to Harrod that he had been in a lot of pain, lying on his bed was painful, and that his mattress was making the pains from the PT worse.  *Id.*  The doctor advised that he had "put in a request" for plaintiff to "try" Lyrica for his FMS pain.  U.T. Philbrick sat in on the visit "to make sure" plaintiff "was getting proper care."  *Id.*

On May 28, 2014, plaintiff wrote a letter to Roberts and Heimgartner in which he stated the following.  *Id.*  On May 17, he was taking Cipro; his leg, foot and ankle were swollen; and

Cipro "can cause those side effects."  APRN Cochran agreed that
the Cipro could have caused the problem and discontinued this
medication.  Cochran then ordered the pain medication Naproxin,
which plaintiff had taken in the past and found to be
ineffective.  *Id.*  Plaintiff claimed Cochran was either
incompetent or knowingly gave him ineffective treatment.

On June 5, 2014, plaintiff wrote a letter to Roberts and
Heimgartner stating that another inmate had received a new
mattress and claiming that he had been lied to and retaliated
against in the denial of his own mattress request.  *Id.* at 8.
He threated to file a civil action in federal court.  He also
complained that he had "submitted a sick-call several weeks ago,
and the only care (he) received was known ineffective . . .
treatment of Tylanol (sic) and ice," which was no care at all.
*Id.* at 9.

Two days later plaintiff wrote a letter to defendants
Roberts and Heimgartner in which he stated the following.  He
was having problems at OCF with RN Seawood.  *Id.* at 21.  On that
day, he was called to the clinic and "threatened by nurse
Seawood with a DR for not showing up" for PT appointments every
day and for failing to answer calls and passes.  Nurse Seawood
lied as plaintiff had not failed to answer calls and passes but
had signed refusal forms instead.  He never agreed to the PT
appointments or to perform PT movements at OCF but is

"performing that PT in the shower every day." *Id.* at 21. He repeatedly told nurses and HCPs in the refusal forms that "further PT would be ineffective" and exacerbate his medical problems. *Id.* "Just several weeks ago" he was allowed to try ice packs from the clinic for a couple days for back pains, but Nurse Seawood stopped that so he has to "use a trash bag" for ice and go back and forth to the ice machine, which exacerbates his back pains. *Id.* at 22. Nurse Seawood refused to allow his use of an electric heating pad, so he has to use a towel and hot water requiring many trips. The HCP at OCF who ordered PT is ignoring what the "PT at the Parsons Hospital" said, which was for him to come to the hospital two or three times a week so she could perform PT. "The nurses and the HCPs are trying to force" him to "perform things" that he knows are either ineffective or are known to exacerbate his medical problems "even though" the nurses know he "will continue to refuse the further PT done in the clinic." *Id.* at 23. He requested that Roberts and Heimgartner "get the PT stopped in the clinic forthwith" or he would take action in federal court. *Id.* On June 13, 2014, Roberts and Heimgartner received another letter from plaintiff. *Id.* at 36. Therein, he complained that HCPs at OCF were ordering treatments without first seeing if the patient agreed to do or take the treatment, were "unethically" failing to disclose alternative methods of treatment, were obligated to

discuss side effects to drug treatments, and were "refusing to listen to (his) description of pain or to move to more effective drugs as needed." *Id.* He threatened to sue if defendants did not stop these acts by the HCPs. On June 16, 2014, Heimgartner responded to this correspondence that "the informed consent issues have been reviewed on many occasions in the past" and listed "numerous grievances in regard to this matter." *Id.* at 38.

In a second attached declaration in Case No. 14-3146, plaintiff stated that when he saw Dr. Harrod on June 24, 2014:

> the doctor confirmed that he knew I had stopped taking
> . . . Effexor. He asked me how long I had stopped
> taking it. I told him I did not know. He asked me
> why I had stopped taking it. I told him all the side
> effect I had when I took that medication. The doctor
> did not offer me any kind of replacement treatment for
> the fibromyalgia pain.

*Id.* at 2. Plaintiff also declared that he was "still having to sign refusal forms every morning to refuse to take the Effexor." *Id.* He also stated he told Dr. Harrod at the June 24 visit that he was still having back pain because his mattress was "hard broken down foam" and a thick foam mattress would help, but the doctor responded that he was not allowed to order a thicker or extra mattress. On June 28, plaintiff wrote a letter to the Governor, Roberts and Heimgartner in which he stated that he was continuing to have pain every night from his "sunken, hard broke down foam mattress" that was "approximately one month old." *Id.*

at 12.   With respect to his continuing fibromyalgia pain, he
stated there "are stronger pain medications that could be tried,
but I am told they are not given to inmates within the KDOC even
though those medications are given to patients in the outside
community." *Id.* at 13.

Plaintiff received a "Non-Grievance-Response" from Deputy
Goddard dated July 3, 2014, regarding his letter to the
Department about his mattress and PT.   *Id.* at 52.   Goddard
acknowledged Beauclair's history of fibromyalgia and chronic
pain, but concluded:

> The Kansas Department of Corrections Medical Health
> Authorities reviewed the grievance, the site response,
> and the HER.   Naprosyn and other NSAIDS, Lyrica and
> Tylenol are appropriate treatments for fibromyalgia. .
> . .   The offender has been refusing physical therapy
> on-site, therefore an outside follow up appointment
> would not be useful.

*Id*.   Plaintiff wrote a "Demand Letter" to Roberts and
Heimgartner dated July 13, 2014, in which he complained of delay
of a day or less in being seen at the clinic for a swollen foot
and ankle.   Case No. 14-3146 (Doc. 1-2) at 14.   He claimed that
the officer on duty inappropriately determined that his
condition was a nonemergency and should have instead immediately
sent him to see medical staff.   However, he managed to attend a
family visit in the morning and afternoon at times when he might
have been seen at the clinic.   He was seen the following day.
*Id*.   He demanded that $10,000 be placed in his "KDOC Bank

24

account forthwith" or he would file a federal 1983 action that would cause KDOC to spend "a lot more than that on legal expenses" even if he loses in federal court. *Id.* at 16. Two days later, plaintiff wrote another "demand letter" to Roberts complaining about Goddard's "Non-Grievance-Response" and his conclusion therein that "Naprosyn and other NSAIDS" are appropriate treatments for fibromyalgia. *Id.* at 18. He claimed this was not correct "when dealing specifically with him," that "those medications have for years" been "totally ineffective" on his fibromyalgia pain, and that giving him this treatment would be inadequate and amount to deliberate indifference. *Id.* at 19. He further stated as follows. The "same would go for the Tylenol" that Goddard mentioned as appropriate treatment because it has also been "repeatedly shown to be ineffective" on his pains. The pain medications Goddard mentioned "are not FDA approved for FMS pain" but are only an "off lable usage for FMS pain." There "are only appx. four medications that are FDA approved for FMS pain" one of which is Lyrica. *Id.* Goddard also mentioned Lyrica, which plaintiff was given at OCF "just a short time ago," but was stopped by the "medical department" shortly after he started taking it. "[S]everal days later" he started taking "another pain medication" for his fibromyalgia that had side effects, so he stopped taking it. *Id.* He told Dr. Harrod about the side effects but was "forced" to continue

taking that medication.   So he has continued to sign refusal forms.   He is thus "not getting any kind of care" for his pains at the OCF.   If Roberts did nothing he would have to file suit against him and others that would cost KDOC thousands of dollars to defend.   *Id.*   Plaintiff wrote a letter to Burris dated July 19, 2014, regarding a response he had received from Burris to his 6/5 and 6/7 letters.   Burris advised plaintiff to file grievances on his complaints and that his unit team manager was available to assist him with concerns.   *Id.* at 24.   In this letter, plaintiff argued that he was told in writing not to file medical grievances or he would be fined, he had "repeatedly been fined for filing medical grievances," and his UT manager does not investigate his medical claims or follow procedures such as time limits.   He thus claimed that he had no available administrative remedies and that the law in Kansas provided he did not have to use the grievance process absent meaningful access.   He also claimed that his letters to "Ray Roberts, etc, amount to his full exhaustion of administrative remedies because Roberts is the final person for appealed grievances."   He stated that he "will be declining to" use the administrative grievance process for his "medical issues."   *Id.*

In a third declaration, plaintiff stated that he saw Dr. Harrod on July 24, 2014 and was again asked if he was taking Effexor, so he reminded Harrod that he was not due to "bad side

effects." *Id.* at 3.  He also told Dr. Harrod that UT Brill had replaced his mattress "with another used mattress" that was not thicker and that he was still having "a lot of pain every night from the hard mattress."

On July 27, 2014, plaintiff wrote a "Demand Latter (sic)" to Roberts and Heimgartner, in which he complained of inadequate medical care at OCF.  *Id.* at 32.  He stated he had told Dr. Harrod that he stopped taking the pain medication Effexor due to bad side effects and reminded Harrod that he was "still being made to sign refusals every day," but Harrod wanted him to continue taking the Effexor and never stopped it.  He further stated that Harrod did not order any new pain medication for him to try, even though there "are many other pain medications that could be ordered."  He also recounted his complaint to Dr. Harrod about his new mattress.  *Id.* at 33.  He claimed that he was not receiving any kind of pain medication for his FMS, his CFIDS, or his MPS, or for daily shoulder, back, hand and hip pains and that the medication for his mouth ulcers was ineffective except for brief times.  He requested $50,000 in punitive damages.  *Id.* at 33-34.

## CLAIMS

In his Amended Complaint, plaintiff names as defendants: Ray Roberts, Secretary of Corrections; James Heimgartner,

Warden, El Dorado Correctional Facility (EDCF) and Oswego Correctional Facility (OCF); (fnu) Cochran, Advanced Practice Registered Nurse (APRN), OCF; (fnu) Mabwa, Registered Nurse (RN), OCF; (fnu) Braun, RN, OCF; and (fnu) Seawood, RN, OCF.

Mr. Beauclair designates defendant "APRN Cochran" as Count 1 of his complaint. He alleges the following facts in support of this Count. On November 2, 2013, "amitripileen" was prescribed for plaintiff's pain and sleep problems. APRN Cochran knows of plaintiff medical diagnoses and problems. Plaintiff had informed Cochran "during previous sick call visits" that amitripileen "and many other medications" had proven ineffective. On November 5, 2013, he was seen by Cochran and reminded him that he had taken "amitripileen" in the past and it was ineffective. Cochran discontinued it and agreed to put in a request for plaintiff to try "one of the FDA approved pain medications" for fibromyalgia. He left the clinic with no treatment. Plaintiff heard nothing until he saw Cochran on January 13, 2014. Cochran advised that "there was a new medical provider for KDOC" and that he would check the new list of "FE" treatments to see if "any of the FDA approved pain medications" for fibromyalgia were included. Plaintiff left this appointment with no treatment. Plaintiff heard nothing until February 5, 2014, when he was seen by Cochran for his "chronic care" high blood pressure. Cochran had not yet read the list, but asked

how plaintiff was doing aside from his pain and sleep problems. Plaintiff left with no care for his pain and sleep problems. Defendant Cochran "continued not to provide plaintiff with medical care and treatment" up to the time this complaint was filed.

Plaintiff designates RN Braun as Count 2.  As supporting facts he alleges the following.  He injured his shoulders and finger on December 20, 2013, and was seen by defendant RN Braun in the clinic that day.  Braun only prescribed Ibuprofen, which is known to be ineffective for plaintiff's pains, and did not schedule him to see a doctor or APRN.  Nurses at other facilities have scheduled plaintiff to see a doctor or APRN after he saw them once.  Plaintiff continued to have pain and submitted another sick-call slip in four days.  He has had ongoing considerable pains with his shoulder and finger.

Plaintiff designates RN Seawood as Count 3.  As supporting facts for this Count, he alleges the following.  On December 24, 2013, he submitted a sick-call slip for poor sleep and "considerable pains" due to lying on his "hard mattress" and stated that "doctors/APRN had done nothing" for months and "the mild pain relievers did nothing."  He was seen by RN Seawood who did nothing but write on the sick-call slip that he was denied a new mattress.  Seawood provided no treatment and did not schedule him to see a doctor or APRN.  Plaintiff was charged

$2.00 for this visit.  He continued to suffer pain each time he lay on his mattress and to have trouble sleeping.

Plaintiff designates RN Mabwa as Count 4.  He alleges the following facts in support.  On January 17, 2014, he submitted a sick-call slip stating he was still having shoulder and back pains "every time he lays on his hard bed."  He was seen by defendant Mabwa that day and went into great detail as to his pains and medical and sleep problems.  Mabwa provided no treatment and did not schedule him to see a doctor or APRN.  Plaintiff concludes that up to the date this action was filed, he had not seen a doctor or APRN for his pains and poor sleep.  The medical events that are actually described in the Amended Complaint in this action occurred on and between November 1, 2013 and March 7, 2014.

Plaintiff designates "Ray Roberts and James Heimgarnter)(Supervisory Liability)" as Count 5.  He alleges the following in support of this Count.[12]  Heimgartner sent a March 2013 memo stating that plaintiff had been warned and sanctioned at HCF for filing abusive grievances, filing grievances on the "same topic" was abusive, and plaintiff was abusing the grievance process.  Heimgartner sent a second memo in October 2013 warning plaintiff to stop filing "duplicative grievances

---

[12]    The court has rearranged plaintiff's supporting facts for his counts into chronological order.

about his health care treatment" and stating that Secretary Roberts would be asked to fine him $5.00 for each such grievance. Plaintiff's November 18 letter to defendants Roberts and Heimgartner informed them that he was "currently being denied care and other violations of law," and threatened "court action" if the violations did not stop.

In plaintiff's December 23 grievance against APRN Cochran and "other medical staff" at OCF, he had complained of denial of "medical care since November 2013 by Mr. Cochran." His grievance was not investigated to establish the facts and his appeal was denied by defendant Heimgartner finding "duplicate issue." The January 10, 2014 response from Goddard "dealing with" plaintiff's November 18 letter to Roberts and Heimgartner discussed issues that were not in plaintiff's letter by referring to "24 encounters" and that plaintiff had started Amitriptyline for pain and sleep problems but did not "give it a fair trial." Plaintiff's letter of January 27, 2014, to Roberts and Heimgartner informed both that he was currently being denied care, known ineffective care was being continued, and he had "not received any care since November 2013." He also claimed "state law violations" and threatened to file a § 1983 action unless "the unlawful actions" stopped, but has no evidence that defendants did anything in response. Defendants have repeatedly told plaintiff that he can be fined for filing duplicative

grievances and have fined him.

Plaintiff designates "(Ray Roberts)(Retaliation)" as Count 6. As supporting facts he alleges the following. Roberts notified plaintiff on March 30, 2012, that he was fined $20.00 for filing four "repetitive grievances" dated January 12, 2011, and January 23, 26 and 31, 2012 and cited K.A.R. 44-15-102(d) as authority the fines. Roberts notified plaintiff in February 2013 that he was fined $5.00 for "a repetitive grievance dated 12-10-2012." Roberts notified plaintiff on March 25, 2014, that he was fined $45.00 for filing repetitive grievances and provided the dates those grievances were received. Plaintiff was deprived of his property without a prior hearing. No evidence was presented that these grievances were the same as previously-filed grievances, and they were deemed duplicative only upon Roberts' say-so.

Plaintiff asserts that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to reasonable medical care and to not be subjected to unnecessary pain; his rights under the First Amendment to court access and freedom of speech, and his right to "substantive due process." In addition, he claims that defendants violated state laws and regulations: IMPP 10-121" by not acting as "gatekeeper" and not providing adequate medical care; "K.S.A. 75-5416 with mistreatment of a confined person"; and IMPP 02-

118.IV.B(1),(4),Q(1),(2).   He also claims that Roberts and Heimgartner as "supervisory employees" violated a list of state statutes, and that Roberts violated two K.A.R. provisions and IMP 02-118.IV.B(1),(4).

## REQUESTS FOR RELIEF

Plaintiff seeks a declaration that defendants violated his Eighth Amendment right to necessary medical care together with an injunction requiring defendants to stop causing him needless pain and to provide him with adequate medical care.   He also seeks a declaration that Roberts violated his First Amendment rights by fining him for grievances and deprived him of money without adequate procedures together with an injunction prohibiting Roberts from imposing sanctions that violate his First Amendment rights and requiring Roberts to remove sanctions already imposed.[13]   Finally, plaintiff seeks nominal damages "in the maximum amount allowed by law" and punitive damages from each defendant.

## SCREENING

---

[13]    Plaintiff's requests for a declaration "that all or any" defendants violated his Fourteenth Amendment "right with Due Process with medical care, personal security, needless pain and suffering;" a declaration that K.A.R. 44-15-10.2(d) is unconstitutional; and an injunction prohibiting defendants from retaliating against him for filing this action and transferring him from OCF are supported by no facts or legal authority whatsoever and are dismissed without further discussion.

Because Mr. Beauclair is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988)(citations omitted). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The U.S. Supreme Court explained in *Iqbal*:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 679. "In keeping with these principles a court . . . can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* The "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. The Tenth Circuit has pointed out that the

Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); see also *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  Under this new standard, "a plaintiff must nudge his claims across the line from conceivable to plausible." *Smith*, 561 F.3d at 1098; *Bloom v. McPherson*, 346 Fed.Appx. 368, 372 (10th Cir. 2009); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible."  *Robbins*, 519 F.3d at 1247 (citing *Twombly*, at 1974).

## OTHER LEGAL STANDARDS

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 Fed.Appx. 667, 672 (10th Cir. 2008)(citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)).  The "deliberate indifference"

standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)(quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)(quotation omitted)). Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). If prison medical staff respond "to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard."

*Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). "But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law." *Id.* at 1232-33.

Of particular relevance to Mr. Beauclair's allegations, a mere difference of opinion between the inmate and prison medical personnel regarding reasonable treatment does not constitute cruel and unusual punishment. See *Estelle*, 429 U.S. at 106-07; *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999)("a prisoner who merely disagrees with a . . . prescribed course of treatment does not state a constitutional violation"); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)(A difference of opinion between a physician and a patient or even between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983.); *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.). "The prisoner's right is to medical care-not to the type or scope of medical care he personally

desires." *Henderson v. Sec. of Corr's*, 518 F.2d 694, 695 (10th Cir. 1975).

Furthermore, "a complaint that a physician has been negligent in . . . treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1142-43 (10th Cir. 2005)(a mere difference of opinion about treatment, even among professionals, does not give rise to claim under the Eighth Amendment, even if the treatment in question constituted medical malpractice). The negligent conduct of a prison official is, in all cases, insufficient to rise to the level of deliberate indifference. *Farmer*, 511 U.S. at 835 ("Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety" (quotations omitted)). As the United States Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105-106 (footnote omitted).

Likewise, a delay in medical treatment, without more, does not violate the Eighth Amendment. In situations where treatment

was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay to state a claim. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006).

## DISCUSSION

Having considered plaintiff's litigation background and all materials filed by plaintiff under the applicable standards, the court dismisses this action for failure to state a claim and as frivolous and abusive for the following reasons.

1. ***Official Capacity Claims Fail***

Plaintiff names defendants in their personal and official capacities.  However, as plaintiff has previously been advised, a suit for damages against a state official in his or her official capacity is barred by the Eleventh Amendment because such a lawsuit is, in essence, one against the State.  Thus, plaintiff's claims for money damages against defendants in their official capacities are dismissed with prejudice.

2. ***State Law Claims Fail***

As noted, the complaint in a § 1983 action must specify "the violation of a right secured by the Constitutional and laws of the United States." *Bruner v. Baker*, 506 F.3d 1021, 1025-26 (10th Cir. 2007).  "[A] violation of state law alone does not

give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994).   Plaintiff cites numerous state statutes and regulations.   However, he does not provide the content of any, or explain how the particular statute or rule entitles him to relief under § 1983.   Thus, plaintiff's allegations that a state statute or prison regulation was violated by defendants present no claim for relief under § 1983.   Furthermore, since plaintiff otherwise fails to show a federal constitutional violation, the court has no cause to exercise supplemental jurisdiction over his state law claims.

### 3. *ADA Claims Fail*

Plaintiff asserts that he is "a qualified individual with a disability" under the Americans with Disabilities Act (ADA); that he has been issued a "Disabled Identification Card" by the State of Kansas; that his "being denied medical care amounts to an exclusion from medical service which is a program, service or activity;" and that he has received "disparate treatment."   In *Beauclair v. Norris*, Case No. 12-3189, plaintiff was informed that "to the extent" he sought relief under the ADA, he failed to state a claim for relief based on "settled law in the Tenth Circuit 'that the ADA does not provide a private right of action for substandard medical treatment."   See *Fitgerald*, 403 F.3d at 1144; see also *Breedlove v. Costner*, 405 Fed.Appx. 338, 341 (10th

Cir. 2010)(state prisoner's claim alleging inadequate medical care failed to state claims of ADA violation.)).   In any event, plaintiff's allegations of ADA violations and disparate treatment are nothing more than formulaic recitations.

**4.   *Eighth Amendment Claims Fail***

Plaintiff asserts in his Amended Complaint that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by denying him reasonable medical care and subjecting him to unnecessary pain.   However, his general complaints in this regard, which make up most of his complaint, are formulaic, conclusory, and repetitive of claims in his prior actions.   In addition, they are fully refuted by his factual allegations and exhibits.   Plaintiff's sparse allegations regarding the acts or inactions of individual defendants during the relevant time frame are also insufficient to state a plausible claim for relief.

**A.   General Claims of Denial of Medical Treatment**

Plaintiff makes many general allegations in his Amended Complaint regarding his medical care.   For example, he alleges before each count that he has been subjected to "needless pain and suffering due to an "ongoing" denial of medical care; medical treatment "was either delayed or denied," he was prescribed medication "known to be ineffective . . . which is like giving him no care at all;" and that each defendant was

"put on notice" as to plaintiff's "considerable pain and suffering" and "failed to act reasonably to abate future harm to plaintiff's health or safety."  Mr. Beauclair should be well-aware that these types of conclusory statements and formulaic recitations are simply inadequate to state a constitutional claim.

The court finds here, as it did in two prior cases, that Mr. Beauclair has been provided rather than denied necessary medical treatment.  Mr. Beauclair can no longer viably argue that he has been denied medical treatment for years or months during his imprisonment when his litigation history so plainly demonstrates otherwise.  His own factual allegations and exhibits in this and his other relevant cases show that he has been seen numerous times for his many diagnosed medical conditions and assigned to the chronic care program.  He has repeatedly sought and received medical attention for his fibromyalgia pain and pains from other sources including those allegedly caused by his mattress.  He does not describe a single incident where his sick-call slip for medical attention was refused or ignored.  Nor has he alleged that medical personnel answering his sick-calls were unqualified.  His complaints of chronic pain and sleep problems have been evaluated by many different medical professionals including various types of nurses, medical technicians, and doctors.  His complaints have

been listened to and he has been examined and tested by medical professionals at various institutions.  His overall medical care has been reviewed more than once by medical providers and prison officials.   He has been prescribed many types of pain medication, while his exhibits indicate that he is currently "signing refusals" as to two recently prescribed drugs. Requests for non-formulary drugs apparently were submitted at his suggestion and denied.  Even under these conditions, other pain medications and treatments recognized as appropriate for his fibromyalgia pain have been made available to him. Plaintiff does not allege that any defendant withheld his prescribed medication.   He has been advised regarding other types of treatments for his pains such as exercise and physical therapy but refused to participate.   He has been given appropriate medical tests for his conditions and then complained about having to undergo or criticized them.   In short, throughout his confinement Mr. Beauclair has been provided continuous medical attention as needed and whenever he requested, and his chronic conditions have been treated and monitored to the extent he has allowed.

Numerous medical professionals responsible for plaintiff's care and treatment have exercised their considered judgment as to the proper treatment for plaintiff's conditions including his pain and sleep problems.   The court accepts as true that

plaintiff's conditions are serious and have affected his daily activities and that he has suffered from pain over a significant period of time. However, its inquiry under the Eighth Amendment does not end with the finding that plaintiff has serious medical needs. As plaintiff has previously been informed, he must also demonstrate deliberate indifference on the part of prison officials. The Tenth Circuit has explained:

> The subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing. See, e.g., *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)(noting that types of medication prescribed . . . are generally matters of medical judgment). The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves "the question whether additional diagnostic techniques or forms of treatment is indicated." *Estelle*, 429 U.S. at 107, 97 S.Ct. 285.

*Self*, 439 F.3d at 1232; *Estelle*, 429 U.S. at 107 (The question whether additional forms of treatment are "indicated is a classic example of a matter for medical judgment."). "[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted . . . ." *Id.* Plaintiff alleges no supporting facts and describes no evidence suggesting that defendants acted with a sufficiently culpable state of mind. No rational jury could conclude from

the sparse facts and conclusory allegations in this latest complaint, measured against the extensive record of Mr. Beauclair's medical treatment while in prison and his recalcitrance, that defendants were deliberately indifferent to plaintiff's medical needs.

In addition, Mr. Beauclair's continuous complaints regarding his treatment for chronic pain and sleep problems amount to nothing more than a dispute over the adequacy of the care provided.  As support for his general Eighth Amendment claims in this action, he mainly alleges that the medications prescribed for his pain have been ineffective and he has been denied a mattress of his specifications.  These allegations evince nothing more than a difference of opinion between plaintiff and the trained medical staff who have exercised their professional judgment as to these matters.  Mr. Beauclair has previously been informed by this court and the Tenth Circuit that such a dispute does not rise to the level of an Eighth Amendment violation.

Even if plaintiff has proof that the medical judgment of any defendant was unsound or that more efficacious treatment was available but not prescribed, these allegations amount to no more than a claim of negligence.  "[A] complaint that a physician has been negligent in . . . treating a medical condition does not state a valid claim of medical mistreatment

under the Eighth Amendment.'" *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)(citing *Estelle*, 429 U.S. at 106). While the judgment of medical personnel which results in the deprivation of medical treatment may give rise to an action in tort for malpractice or negligence, it does not rise to a federal constitutional violation. *Estelle*, 429 U.S. at 105-06; *Losee v. Garden*, 420 Fed.Appx. 821, 824 (10th Cir. 2011)(citing *Perkins*, 165 F.3d at 811)("Even '[a] negligent failure to provide adequate medical care, [and] even one constituting medical malpractice, does not give rise to a constitutional violation.'"); *Self*, 439 F.3d at 1233(In the end, the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation.").

Furthermore, as Mr. Beauclair has been informed by this court and the Tenth Circuit, he is not entitled to the medication or other treatment of his choosing. The Supreme Court has expressly held that:

> the Eighth Amendment does not afford prisoners a right to medical treatment of their choosing; the question of what . . . treatments should be administered to an inmate is a 'classic example of a matter for medical judgment' and accordingly, prison medical personnel are vested with broad discretion to determine what method of care and treatment to provide to their patients.

*Estelle*, 429 U.S. at 107.   Plaintiff mainly disagrees with the

type and strength of pain medication prescribed for his pain. It bears repeating that "the prisoner's right is to medical care—not the type or scope of medical care which he personally desires." Decisions as to which particular drug an inmate receives are left to the discretion of trained prison medical personnel. See *Boyett*, 282 Fed.Appx. at 674 (A prison medical assistant's substitution of Clonidine for Methadone, which was not allowed in the facility, does not demonstrate deliberate indifference); *Moore v. Friel*, 2007 WL 1874194 (D.Utah, June 27, 2007). Plaintiff's "belief" that he needs "additional medication, other than that prescribed" is simply "insufficient to establish a constitutional violation." *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); see *Hill v. Cavanagh*, 223 Fed.Appx. 595, 596 (9th Cir. 2007)(state prison officials not deliberately indifferent to state prisoner's medical needs, including alleged hypertension and back and knee pains, where medical staff monitored prisoner and prescribed Motrin for his pains); *Mack v. Wilkinson*, 90 Fed.Appx. 866, 867-68 (6th Cir. 2004)(affirming summary judgment where medical staff treated plaintiff's back pain with Motrin and took steps to supply plaintiff with a substitute prescription while his Motrin was refilled); *Ortiz v. Makram*, 2000 WL 1876667, at *10 (S.D.N.Y. Dec. 21, 2000)("It is not for this Court to determine whether [plaintiff's] condition warranted Percocet, or whether, in light

of his condition and his history of drug addiction . . .
[plaintiff] should have received Motrin.  It is sufficient that
this case . . . involved a consideration of the inmate's overall
condition and a medical determination as to the appropriate
treatment.  [Plaintiff's] disagreement with that judgment does
not render it constitutionally infirm.").  Likewise, "[t]he
failure to provide stronger pain medication does not constitute
deliberate indifference." *Harris v. Westchester Cnty. Med.
Ctr.*, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011)("The
failure to provide stronger pain medication does not constitute
deliberate indifference."); see also e.g., *Feder v. Sposato*,
2014 WL 1801137, at *9 (E.D.N.Y., May 7, 2014)(same); *Jacobs v.
McVea*, 2014 WL 2894286, at *7 (E.D.La., June 25, 2014)("While it
is evident that plaintiff was unhappy with the over-the-counter
pain medication, a prisoner has no right to be prescribed a
particular medication for pain, and the fact that he disagrees
with the prison medical staff concerning which pain medication
is appropriate is not actionable under § 1983."); *Womack v.
Bakewell*, 2013 WL 3148467, at *9 (E.D.Cal., June 19,
2013)(plaintiff's disagreement with defendants about the type
and strength of his pain medication did not reflect a conscious
disregard of plaintiff's serious medical needs; plaintiff's
preference for stronger medication "represents precisely the
type of difference between a lay prisoner and medical personnel

that is insufficient to establish a constitutional violation."); *Gibson–Riggs v. Grant County Detention Center*, 2010 WL 1050071, at *6–7 (E.D.Ky., March 18, 2010)(plaintiffs' allegations that they did not receive their preferred medications "sounds in negligence, which is not actionable under § 1983" and amounted to nothing more than a disagreement with the course of treatment).   Mr. Beauclair has previously been informed by courts, prison officials, and prison medical staff that he is not entitled to different, additional, or particular medication based upon his lay opinion.   He does not render himself so entitled by refusing to take prescribed medication.   Moreover, no culpable state of mind is established by the denial of a medication for valid security reasons or because it is not on a formulary or is more costly.   Plaintiff presents no medical evidence and offers nothing but his opinion that a particular medication or treatment prescribed for him by a KDOC medical provider was "patently unreasonable."[14]   See *Self*, 439 F.3d at

---

[14]   A court in this district has described fibromyalgia and its treatment as follows:

> Courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling." (citations omitted).   More recently, the Eighth Circuit summarized the following observations about fibromyalgia:

> Fibromyalgia, a chronic condition recognized by the American College of Rheumatology (ACR), is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. According to the ACR's 1990 standards, fibromyalgia is diagnosed based on widespread pain

1232.

Finally, it is plain that Mr. Beauclair has interfered with his own medical care.  Rather than complying with the medical orders dispensed by his many trained health care providers, he has refused prescribed medications, refused to perform PT at the clinic, refused to exercise, and insisted on complete inactivity instead.  This scenario in no way suggests an Eighth Amendment violation on the part of defendants.  See *Carter v. Troutt*, 175 Fed.Appx. 950 (10th Cir. 2006)(No Eighth Amendment violation by prison doctor who refused to prescribe a certain pain medication where he prescribed other medications for the inmate who missed follow-up appointment for treatment and refused to be examined unless he was prescribed the pain medication he wanted.); *Mosley v. Snider*, 10 Fed.Appx. 663 (10th Cir. 2001)(Inmate did not state an Eighth Amendment claim with allegations that his prescription was discontinued because facility physician determined it was no longer needed, a different medication was prescribed but the inmate refused to accept it, and the inmate then missed his next three medical appointments.); *Olson v. Coleman*, 993 F.2d 1551 (10th Cir. 1993)(Plaintiff's claims of

---

with tenderness in at least eleven of eighteen sites known as trigger points. Treatments for fibromyalgia include cold and heat application, massage, exercise, trigger-point injections, proper rest and relaxants, antidepressants, and anti-inflammatories. See Jeffrey Larson, Fibromyalgia, in 2 The Gale Encyclopedia of Medicine 1326-27 (Jacqueline L. Longe et al. eds., 2d ed.2002). *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1 (8th Cir. 2003).

*Priest v. Barnhart*, 302 F.Supp.2d 1205, 1213-14 (D.Kan. 2004).

denial of medical care must fail in light of testimony that plaintiff refused medical care while at the correctional facility.).  Prisoners generally have the same option as a non-prisoner patient to refuse prescribed treatment and be non-compliant with their doctor's medical advice.  However, inmate patients who choose non-compliance have no logical or legal basis for suing their prison medical care providers for ineffective treatment.  Plaintiff does not describe a single incident during which he went without pain medication due to the act or inaction of a defendant rather than his own act of refusal.  Instead of working with his prison medical care providers by, for example, complying with prescriptions and allowing his providers to judge their efficacy and the severity of side effects, Mr. Beauclair has for years spent his time and energy striving to intimidate prison staff to provide the treatment and other accommodations that he demands through repeated administrative actions along with threats and pursuit of lawsuits against them.  His pursuits have often resulted in a waste of limited KDOC and judicial resources, and often seem to be harassing in nature.  Mr. Beauclair has continued and intensified this pattern of abuse despite being informed in his 2003 case that the allegation that no cure has been provided for a continuing medical problem does not show deliberate indifference where, as here, acceptable care has been provided;

and even though he announced to prison officials in 2009 that "pain medications were 100% ineffective on (him) for years." For the foregoing reasons, the court concludes that plaintiff's general allegations of denial of reasonable medical treatment for his pains and sleep problems during his confinement with KDOC utterly fail to state a federal constitutional claim and are frivolous and abusive.

**B.  Specific Claims against Defendant Medical Providers**

At the outset, the court emphasizes that the specific claims against the individual medical providers in this case are based on incidents that occurred between November 1, 2013, and March 7, 2014.  The few factual allegations in the Amended Complaint that actually describe acts or inaction on the part of defendant APRN Cochran fail to state a federal constitutional claim.  Plaintiff alleges he was seen by Cochran at the clinic on November 5, 2013, January 13, 2014, and February 5, 2014; and that each time he left with no treatment for his pain and sleep problems.  However, as to the November encounter, according to plaintiff and Goddard, plaintiff had been prescribed Amitriptyline for those very problems three or four days earlier, and this encounter occurred a few days after he signed refusals for this medication.  Goddard found that plaintiff "was not on the medication long enough to give it a fair trial."  At this encounter, plaintiff "reminded" Cochran that he had taken

"amitripileen" in the past and it was ineffective, and Cochran
discontinued it and agreed to "put in a request" for "one of the
FDA approved pain medications" for fibromyalgia.  At the January
encounter, Cochran advised plaintiff that there was a "new
medical provider for KDOC" and he would check the new list of
treatments to see any of the FDA approved fibromylgia
medications were included.  When plaintiff saw Cochran in
February, it was for his "chronic care for his high blood
pressure" and Cochran advised that he had not yet checked the
new formulary.  Even if Cochran acted negligently on these
occasions by not providing treatment beyond monitoring
plaintiff's conditions, allegations of negligence are
insufficient.  In addition, even if Cochran's inaction during
these visits delayed treatment for plaintiff, no constitutional
claim is presented.  Plaintiff does not allege that he submitted
additional sick-call slips during this time.  Nor does he
suggest what treatment Cochran knew plaintiff required and yet
failed to provide at a known risk to plaintiff.  Plaintiff
alleges no facts indicating that Cochran acted with a
sufficiently culpable state of mind during these three
encounters and thus fails to show deliberate indifference.

Plaintiff's main claim against defendants Mabwa, Braun, and
Seawood is that these three RNs failed to act as "gatekeepers."
In support, he generally alleges that they "recognized and noted

plaintiff's pains but ignored them by not" sending him to an APRN or doctor for treatment.  An inmate's medical needs can be provided for "in a variety of ways, including access to trained personnel such as . . . nurses and physician's assistants." *Boyett v. County of Washington*, 282 Fed.Appx. 667, 673 (10th Cir. 2008).  There is no constitutional requirement that an RN refer an inmate to another medical provider after one visit.  Nor does plaintiff allege any facts indicating that it was obvious from his condition during these visits that referral to an ARPN or doctor was medically necessary.

Plaintiff's allegations that he saw RN Braun after he injured his shoulders and finger include that she prescribed Ibuprofen for pain.  The fact that he continued to have pain and submitted another sick-call in four days does not establish that defendant Braun acted with deliberate indifference.  Plaintiff does not describe these injuries to show that they were so obviously serious that they required immediate referral or additional treatment.

Plaintiff's allegations that he complained to RN Seawood and RN Mabwa at sick-calls of pains caused by his hard mattress but they did nothing, are insufficient to establish deliberate indifference to serious medical needs.  Prior to this time, plaintiff had been notified that medical providers could not order a new mattress and his administrative and medical requests

for a new mattress had been denied.  Plaintiff's opinion that
his mattress was causing serious pain and that a new mattress
was medically necessary evinces nothing more than a disagreement
between him and trained medical staff.  In any event,
plaintiff's mattress at the OCF was examined and found to be
comparable to that of most other inmates, and eventually he was
given a different, month-old mattress, which he immediately
complained about as well.

Contrary to plaintiff's claims that he was denied attention
by these medical providers, his own allegations show that he was
promptly seen by Cochran and the defendant RNs and evaluated in
response to his sick-call slips as well as in connection with
his chronic care schedule.  He hints at no evidence that the
treatment prescribed for his fibromyalgia and other pains either
prior to or after these appointments was inappropriate or
contrary to accepted medical practice.  He does not adequately
describe what additional or different treatment he must have
been prescribed at these appointments.  It appears that he had
refused treatment whether recommended by RNs or doctors.  His
opinion that he should have been referred to an APRN or doctor
on these dates is again nothing more than a dispute with his
medical provider that fails to state a constitutional claim.
Even if these defendants erred in not providing some unspecified
treatment or referring him to an ARPN or doctor, an erroneous

medical decision does not, without more, amount to cruel and unusual punishment. See *Estelle*, 429 U.S. at 106.

Furthermore, Mr. Beauclair alleges no facts showing a conscious disregard or culpable state of mind on the part of these defendants, and his mere speculation in this regard is insufficient. *Id.* His repeated allegations that each defendant acted "with deliberate indifference and/or reckless disregard", wantonly, "maliciously", "in bad faith, purposely and intentionally" are nothing but conclusory statements. His allegations and exhibits in Case No. 14-3146 in particular, show that he was eventually seen by Dr. Harrod and that efforts continued to treat his medical problems despite his recalcitrance and non-compliance.[15]    In sum, plaintiff's allegations against the medical personnel named as defendants in this case fail to show that any of these individuals denied him constitutionally-adequate treatment.

### C. Claims against Defendants Roberts and Hemigartner

Plaintiff claims that defendants Roberts and Heimgartner violated his Eighth Amendment and his First Amendment rights.

---

[15]     Mr. Beauclair received other medical attention before and after these encounters. Thus, at most he alleges a delay in treatment. He does not provide a clear time-line or a complete picture, but in the month of September 2013 he had 24 medical encounters. Subsequent to these visits ice and heat treatments were prescribed as well as Tylenol. A PT evaluation and an MRI were performed upon him at a hospital, PT was prescribed and he was called to the clinic for therapy sessions but signed refusals. Dr. Harrod put in a request for Lyrica. Apparently Effexor, which plaintiff also refused, and Cipro were prescribed at various times. Plaintiff's characterization of this attempted regimen as no treatment at all is misleading at best.

In connection with his Eighth Amendment claims in particular, he alleges that these two defendants violated state statutes as "supervisory employees," "mistreated a confined person under facts alleged," violated state regulations by "not providing adequate medical care and treatment" after each was "placed on notice to plaintiff's pain and suffering," failed to take "remedial action" and "act to abate future harm," and disregarded the risk to plaintiff. These allegations are nothing more than conclusory statements and formulaic recitations, and as such fail to state a plausible Eighth Amendment claim.

Plaintiff's Eighth Amendment claims against Roberts and Heimgartner fail for other reasons as well. First, the Amended Complaint does not contain allegations showing their personal participation. Plaintiff's citations to various statutes and regulations do not show personal participation as they are not accompanied by the content of each provision, descriptions of the acts of Roberts and Heimgartner and how they violated the provision, or explanation as to how violations of these state provisions amounted to a violation of the U.S. Constitution. Second, plaintiff alleges no facts in his Amended Complaint showing the personal involvement of either of these individuals in the medical encounters described in his complaint. As noted, plaintiff was informed in prior lawsuits that the personal

participation of each defendant must be alleged and that liability may not be predicated solely upon a theory of respondeat superior. Nonetheless, plaintiff clearly attempts to base his Eighth Amendment claims against Roberts and Heimgartner upon their supervisory capacity. He describes Roberts as "the head of KDOC over all inmates in Kansas State Prison facilities" and "in charge over all inmates for their safekeeping" as well as "final policy maker" and "final appeal for admin. grievances." He describes Heimgartner as "over all inmates at EDCF and OCF" for their "safekeeping" and to protect their health as well as "to respond to inmates grievance appeals." He claims that Roberts and Heimgartner "as "supervisory employees" violated state statutes by "not satisfactorily discharg(ing) their duties," and that Roberts violated regulations. These defendants are not liable simply by virtue of their supervisory status for a denial of medical treatment that allegedly occurred at the hands of an APRN and RNs.

Plaintiff was also previously informed that he may not hold prison officials liable based upon their responses to his administrative grievance appeals and that denial of an appeal or failure to respond does not show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)(A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does

not establish personal participation under § 1983."); see *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012). To the extent that plaintiff's Eighth Amendment claims against Roberts and Hemigartner are based upon their supervisory capacity or their responses to his administrative grievance appeals, plaintiff fails to state a claim for relief against them.

Mr. Beauclair appears to have also attempted to render these supervisory officials liable for his allegedly inadequate medical treatment by sending numerous letters to them outside the grievance process filled with repetitive complaints, notifications, demands, and threats of lawsuits. Neither these letters nor the responses establish that defendant Roberts or Heimgartner personally participated in the medical encounters upon which this complaint is based. Plaintiff's letters clearly failed to follow proper grievance procedures.[16] He does not show that defendants had a duty to become personally or directly involved in his medical care as a result of these letters. This is particularly true where, as here, Mr. Beauclair was being provided medical care. Moreover, the responses to plaintiff's letters plainly show that defendants Heimgartner and the Secretary of Corrections considered his concerns, even though he was not following proper procedure and had repeatedly abused the

---

[16]   Plaintiff more appropriately attempted to involve these officials by submitting "emergency grievances," but failed because his grievances did not meet the criteria for emergency grievances.

grievance process.   Accordingly, the court finds that to the extent plaintiff's Eighth Amendment claims against defendants Roberts and Heimgartner are based upon their responses or failure to respond satisfactorily to plaintiff's correspondence outside the grievance process, they fail to state a claim for relief.[17]   The court concludes that plaintiff alleges no facts to support an Eighth Amendment claim against either of these defendants.

### 5.   *First Amendment Claims Fail*

Plaintiff asserts that defendants Roberts and Hemigartner violated his rights under the First Amendment to court access and freedom of speech and his right to "substantive due process.[18]   This claim is based upon Roberts and Hemigartner having fined plaintiff for duplicative grievances.   Plaintiff alleges no facts to support a denial of free speech claim, and his own exhibits of his continuous writings and responses refute rather than support his bald statement that this right has been

---

[17]   The only appropriate way for Mr. Beauclair to invoke administrative review or action by either of these officials was and is proper use of the prison administrative grievance process.   His attempts to bypass the grievance process by sending personal letters directly to supervisory officials detailing complaints that are perfectly suited to the grievance process do not entitle him to some sort of independent administrative review. Like any other misstep in the process, these letters may be treated as non-compliant.

[18]   The allegations made in support of this claim involve defendants Roberts and Heimgartner only.   The question is presented as to whether plaintiff's First Amendment claims against Roberts and Heimgartner are improperly joined with his medical treatment claims against the other defendants.   While plaintiff may bring all claims he has against the same defendants together, he may not bring different claims against different defendants in a single lawsuit.

"chilled."  With respect to plaintiff's denial of access claim, he has previously been informed that in order to state such a claim he must show actual injury and in order to show actual injury he must allege facts showing that a non-frivolous lawsuit action filed by him was impeded.  Plaintiff does not allege these requisite facts in his Amended Complaint, and his litigation history refutes this claim.

Plaintiff's claim of denial of due process fails because his own allegations and exhibits show that the decisions finding he abused the administrative grievance process and the actions taken as a result were rationally-based rather than arbitrary and capricious.  Plaintiff was plainly notified in advance that he could be fined for his continued filing of duplicative grievances and warned that his abuse could "result in an application of the procedure outlined in 44-15-102(d)(3)."  Each time plaintiff was sanctioned, he was provided with notice identifying his acts of abuse and the underlying authority for fines that were imposed.  The exhibits he provides show that he was sanctioned only for filing duplicative grievances.  He provides no argument or authority to suggest that any additional process, such as an evidentiary hearing, was due under the U.S. Constitution.  At the same time, plaintiff was assured that all new issues he correctly submitted through the inmate grievance procedure will receive a response.  His bald statement that he

filed grievances on "new independent incidents" is belied by his own exhibits.[19]  As early as 2009, he was notified "that KDOC officials will not respond to complaints that have been previously addressed" and reminded that he had previously been so advised.  There is nothing unconstitutional about summarily denying a repetitive grievance.

Plaintiff's claim that the grievance process is no longer available to him due to the sanctions imposed by defendant Roberts and Heimgartner is another overgeneralization that is not supported by the facts.  Even if this statement were true, it fails to state a claim.  There is no constitutional right to a prison grievance procedure.

### 6.  *The Complaint is Abusive*

In this action, plaintiff complains of ineffective treatment for his "chronic pain and poor quality sleep."  He also complains regarding his mattress and being fined for filing repetitive grievances on these matters.  Substantially similar claims have been dismissed for failure to state a claim in at least two prior civil actions filed by Mr. Beauclair.  This action is found to be repetitive and frivolous, and an abuse of the judicial process.  The court further finds that an

---

[19]    Plaintiff alleges that he has "filed many grievances, which none were ever investigated into the facts."  Doc. 4 at 4.  This general statement is patently belied by plaintiff's own exhibits of responses to his grievances. A summary denial is a resolution.

opportunity to amend is not warranted.

**IT IS THEREFORE BY THE COURT ORDERED** that this action is dismissed for failure to state a claim and as frivolous and abusive, and all relief is denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion, and Amended Motion, for Leave to Proceed in forma pauperis (Docs. 2 & 4) are granted. Plaintiff is hereby assessed the full filing fee of $350.00 to be paid through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). The Finance Office of the Facility where plaintiff is currently confined is directed by copy of this Order to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until plaintiff's outstanding filing fee obligation has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

The clerk is directed to send a copy of this Order to plaintiff, to the finance officer at the institution in which plaintiff is currently confined, and to the court's finance office.

64

**IT IS SO ORDERED.**

Dated this 10th day of February, 2015, at Topeka, Kansas.




**s/Sam A. Crow**
**U. S. Senior District Judge**